UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KEYBANK NATIONAL ASSOCIATION,** | CASE NO. 1:23-cv-01897 |
| Plaintiff, | JUDGE _____ |
| v. | |
| DAVENPORT AID PROPCO LLC, PARKHURST AID PROPCO LLC, RIVER RUN AID PROPCO LLC, JACKSON AID PROPCO LLC, MARCY AID PROPCO LLC, WILDFLOWER AID PROPCO LLC, EVERGREEN AID PROPCO LLC, KENT AID PROPCO LLC, MONDELL AID PROPCO LLC, DUBUQUE AID PROPCO LLC, SETTLERS AID PROPCO LLC, BAILY AID PROPCO LLC, TERREBONNE AID PROPCO LLC, RUSS AID PROPCO LLC, ASTOR AID PROPCO LLC, SAGE AID PROPCO LLC, CIMARRON AID PROPCO LLC, POTTER AID PROPCO LLC, PRESTON AID PROPCO LLC, HIGHLANDER AID PROPCO LLC, PRAIRIE SPRINGS AID PROPCO LLC, WHITMAN AID PROPCO LLC, CREST AID PROPCO LLC, RIDGEVIEW AID PROPCO LLC, | |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiff KeyBank National Association ("***KeyBank***") brings this diversity action against the above-captioned defendants (each a "***Defendant***" or "***Borrower***," and, collectively, the "***Defendants***" or "***Borrowers***") for breach of certain loan agreements and seeks the appointment of a receiver and other relief. In support thereof, KeyBank states as follows:

### I.   SUMMARY

1. KeyBank and the Defendant Borrowers are parties to various agreements which

involve KeyBank's financing of the Borrowers' businesses through a mixture of secured term and revolving loans.

2. KeyBank's Borrowers include numerous affiliates of AID Holdings, LLC ("**Holdings**"), one of the largest owners of senior living facilities in the United States. Holdings is the equity owner of each of the Defendants herein, and each Defendant owns a property that serves as collateral for indebtedness owed by each Defendant to KeyBank. Since the COVID-19 pandemic, Holdings' financial condition (and the underlying financial condition of each of the underlying properties and its accompanying operations) has been declining. In the aggregate, Holdings and its affiliates owe KeyBank in excess of $40,000,000.00.

3. Each Defendant has admitted that it is in default, and each Defendant has consented to the appointment of a receiver.

4. Due to the nature of the Properties (as defined below), and the requirement to provide advance notice to State regulators of a change in control, it will take months to effectuate a transfer of ownership of the Properties. During that time period, the Defendants will continue to collect and spend rents from the Properties (which are part of KeyBank's collateral) for the continued operation and maintenance of the Properties, but, in accordance with the Forbearance Agreements (defined below), Defendants will not pay debt service to KeyBank. Because those rents cannot be recovered after they are spent, foreclosure (months from now) is an insufficient remedy. A receiver is therefore needed to take control of the Properties and preserve the rents (and the underlying values of the Properties) pending foreclosure or, potentially, a Court-approved receivership sale.

5. KeyBank is filing its Agreed Application for Appointment of a Receiver contemporaneously with the filing of this Complaint. KeyBank also seeks such other relief as the Court deems appropriate and just.

## II. THE PARTIES

6. Plaintiff KeyBank is a national banking association organized and existing under the laws of the State of Ohio. KeyBank is headquartered and maintains its principal office in Cleveland, Ohio, and is a citizen of Ohio for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

7. Each of the Defendants is a Delaware limited liability company with its principal place of business at 330 N. Wabash Avenue, Suite 3700, Chicago, IL 60611. The Defendants may be served through their respective registered agent for service of process: Maples Fiduciary Services (Delaware) Inc., 4001 Kennett Pike, Suite 302, Wilmington, Delaware.

## III. DIVERSITY JURISDICTION

8. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the minimum jurisdictional limits of this Court and Plaintiff and Defendants are citizens of different states.

9. Plaintiff is deemed to be a citizen of the State of Ohio for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

10. Each respective Defendant is a Delaware limited liability company with a common indirect owner: AID Holdings, LLC. Based upon reasonable knowledge, information, and belief formed after a review of organizational information supplied to KeyBank by Defendants, Defendants are citizens of the State of Delaware for purposes of jurisdiction. Accordingly, Plaintiff and Defendants are citizens of different states.

## IV. PERSONAL JURISDICTION AND VENUE

11. This Court has personal jurisdiction over the Defendants because the Loan Agreement contains a choice of law and consent to jurisdiction provision that expressly provides for jurisdiction and venue in Ohio. *See* Loan Agreement at § 15.01 ("Each Borrower and Limited

Borrower irrevocably (A) submits to the non-exclusive jurisdiction of the state and federal courts having jurisdiction in the City of Cleveland, County of Cuyahoga, State of Ohio…"). Although certain security agreements executed in connection with underlying properties securing the underlying indebtedness provide for jurisdiction/venue in the forum where the property is located, Section 15.12 of the Loan Agreement states that "[i]f any provision of this Master Agreement is in conflict with any provision of any other Loan Document, the provision contained in this Master Agreement shall control." *Id*. at § 15.12.  Accordingly, the Defendants are subject to the jurisdiction of this Court, and venue properly lies in this District.

12. Further, venue is proper in Ohio in connection with claims against many Defendants, pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In addition, this Court has pendent venue (in its discretion) given that all the Defendants are controlled, or affiliated, with each other, and the Loan Agreements provide for exclusive jurisdiction in this District for the vast majority of the Defendants.

V. FACTUAL BACKGROUND

A. The Properties

13. The following Properties are referred to collectively herein as the "*Chief1 Properties*," and the corresponding Defendants are referred to collectively herein as the "*Chief1 Defendants*."

| *Property Name* | *Property Address* | *Defendant* |
|---|---|---|
| Davenport Place | 930 Oak Street<br>Silverton, OR 97381 | Davenport AID Propco LLC |
| Parkhurst Place | 2450 May Street<br>Hood River, OR 97031 | Parkhurst AID Propco LLC |
| River Run Place | 1155 Darlene Lane<br>Eugene, OR 97401 | River Run AID Propco LLC |
| Suncrest Place | 300 and 320 Suncrest Road<br>Talent, OR 97540 | Jackson AID Propco LLC |

| Marcy Place | 2301 Wasson Road<br>Big Spring, TX 79720 | Marcy AID Propco LLC |
| --- | --- | --- |
| Wildflower Place | 706 Redcoat Drive<br>Temple, TX 76504 | Wildflower AID Propco LLC |
| Evergreen Place | 2610 Southeast 164th Avenue,<br>Vancouver, WA 98683 | Evergreen AID Propco LLC |
| Kent Place | 2647 North West Kent Street<br>Camas, WA 98607 | Kent AID Propco LLC |
| Kingswood Place | 15155 West Mondell Road<br>Surprise, AZ 85374 | Mondell AID Propco LLC |
| Eagle Pointe Place | 2700 Matthew John Drive<br>Dubuque, IA 52002 | Dubuque AID Propco LLC |
| Settlers Place | 3304 Monroe Street<br>La Porte, IN 46350 | Settlers AID Propco LLC |
| Bailey Place | 650 Pershing Avenue<br>Bunkie, LA | Baily AID Propco LLC |
| Terrebonne Place | 1163 Museum Drive<br>Houma, LA | Terrebonne AID Propco LLC |
| Russ Place | 165 Jefferson Avenue<br>Ruston, LA | Russ AID Propco LLC |
| Astor Place | 999 Klaskanine Avenue<br>Astoria, OR 97103 | Astor AID Propco LLC |
| Rogue River Place | 2437 Kane Street<br>Klamath Falls, OR 97603 | Sage AID Propco LLC |
| Cimarron Place | 3400 Caldera Drive<br>Midland, TX | Cimarron AID Propco LLC |
| Plum Creek Place | 6800 Plum Creek Drive<br>Amarillo, TX | Potter AID Propco LLC |
| Preston Place | 620 Blanton Drive<br>Sherman, TX | Preston AID Propco LLC |
| Highlander Place | 114 Corduroy Road<br>Kelso, WA 98626 | Highlander AID Propco LLC |
| Sinclair Place | 680 West Prairie Street<br>Sequim, WA 98382 | Prairie Springs AID Propco LLC |
| Whitman Place | 1018 Whitman Street<br>Walla Walla, WA 99362 | Whitman AID Propco LLC |
| Oak Creek Place | 3829 South Chicago Avenue<br>South Milwaukee, WI 53172 | Crest AID Propco LLC |

14. The following Property is referred to herein as the "***Ridgeview Property,***" and Ridgeview AID Propco LLC is referred to herein as "***Ridgeview.***"

| *Property Name* | *Property Address* | *Property Owner/Defendant* |
| --- | --- | --- |
| Ridgeview Place | 12903 East Mission Avenue,<br>Spokane Valley, WA 99216 | Ridgeview AID Propco LLC |

15. The Chief1 Properties and the Ridgeview Property shall be collectively referred to herein as the "**Properties**" or each a "**Property**."

16. Each Property is operated by the respective Chief1 OpCo Guarantor (as defined herein) and the Ridgeview OpCo Guarantor (as defined herein) (each, an "**Existing Operator**") that holds the license for such Property, and a small portion of the assets are still managed by non-defendant Enlivant AID (KB) Mgmt LLC (the "**Existing Manager**") under a management agreement between the Existing Manager and the corresponding Existing Operator, pending transition of management to KeyBank's selected manager, Trustwell Senior Living ("**Trustwell**").

**B.    Chief1 Loan Documents**

17. The Defendants (other than Ridgeview) are party to that certain Fourth Amended and Restated Secured Loan Agreement, dated as of December 18, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Chief1 Loan Agreement**"), by and among CHIEF1 Holdings, LLC, the Defendants (other than Ridgeview) as borrowers (the "**Chief1 Borrowers**"), and KeyBank, as the administrative agent and lender, among others. Pursuant to the Chief1 Loan Agreement, KeyBank provided a loan in the principal amount of up to $30,000,000.00.

18. Holdings guaranteed the payment obligations of the Chief1 Borrowers under the Chief1 Loan Agreement pursuant to that certain Second Amended and Restated Payment Guaranty, dated as of December 18, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Holdings Guaranty**"), executed by Holdings to and for the benefit of KeyBank as administrative agent.

19. Certain other guarantors (the "**Chief1 OpCo Guarantors**") guaranteed the Chief1 Borrowers' payment obligations under the Chief1 Loan Agreement pursuant to that certain Second Amended and Restated Payment Guaranty, dated as of December 18, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Chief1 OpCo Guaranty**"; together

with the Holdings Guaranty, the "**Chief1 Guaranties**"), executed by the Chief1 Opco Guarantors to and for the benefit of KeyBank, as administrative agent.

20. The Chief1 Borrowers' obligations under the Chief1 Loan Agreement are secured by, among other instruments, deeds of trust, assignments of leases and rents, security agreements, financing statements and fixture filings with respect to each of the Properties owned by the Chief1 Borrowers (the "**Chief1 Deeds of Trust**"), executed by each of the Chief1 Borrowers for the benefit of KeyBank.

21. The obligations under the Holdings Guaranty are secured by substantially all of Holdings' assets pursuant to a Security Agreement, dated as of December 18, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Holdings Security Agreement**"), by and among the Chief1 Opco Guarantors and KeyBank.

22. The obligations under the Chief1 OpCo Guaranty are secured by substantially all of the Chief1 OpCo Guarantors' assets pursuant to that certain Fifth Amended and Restated Security Agreement, dated as of December 18, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**OpCo Security Agreement**"; together with the Holdings Security Agreement, the "**Chief1 Security Agreements**"), by and among the Chief1 Opco Guarantors and KeyBank.

23. The Chief1 Deeds of Trust cover the real and personal property owned by the applicable Defendant and located at the Chief1 Properties, in each case, as more particularly described therein. Each of the Chief1 OpCo Guarantors is a non-defendant operating company that leases the applicable Chief1 Property from the applicable Defendant and holds the applicable license to operate the senior care and/or senior living facility on each of the Chief1 Properties.

24. The Chief1 Borrowers, the Chief1 Guarantors and KeyBank have also entered into that certain Forbearance Agreement with Respect to the Fourth Amended and Restated Secured Loan Agreement (the "**Chief1 Forbearance Agreement**"), dated as of July 21, 2023.

25. The Chief1 Loan Agreement, the Chief1 Guaranties, the Chief1 Deeds of Trust, the

Chief1 Security Agreements, the Chief1 Forbearance Agreement, and all other documents and instruments securing or evidencing the Chief1 Loan Agreement are hereinafter collectively referred to as the "***Chief1 Loan Documents***."

**C.    Ridgeview Loan Documents**

26.    Ridgeview is party to that certain Amended and Restated Revolving Loan Agreement, dated as of December 18, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "***Ridgeview Loan Agreement***"), by and among Enlivant Holdings, L.P. ("***Enlivant Holdings***") and Ridgeview, as borrowers (the "***Ridgeview Borrowers***"), and KeyBank, as the lender. Pursuant to the Ridgeview Loan Agreement, KeyBank provided a revolving loan commitment of up to $10,000,000.00. As of the date hereof, letters of credit in the aggregate notional amount of $7,500,000 have been issued under the Ridgeview Loan Agreement.

27.    Ridgeview AID Opco LLC (the "***Ridgeview OpCo Guarantor***") guaranteed the Ridgeview Borrowers' obligations under the Ridgeview Loan Agreement pursuant to that certain Payment Guaranty, dated as of December 18, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "***Ridgeview Guaranty***"), by and among the Ridgeview Opco Guarantor and KeyBank.

28.    The obligations under the Ridgeview Loan Agreement are secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing with respect to the Ridgeview Property (the "***Ridgeview Deed of Trust***"), dated December 18, 2020, executed by Ridgeview for the benefit of KeyBank.

29.    The obligations under the Ridgeview Guaranty are secured by substantially all of Ridgeview OpCo Guarantor's assets pursuant to a Security Agreement, dated as of December 18, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "***Ridgeview Security Agreement***"), by and among the Ridgeview Opco Guarantor and KeyBank.

30. The Ridgeview Deed of Trust covers the real and personal property owned by Ridgeview and located at the Ridgeview Property, as more particularly described therein. Ridgeview OpCo owns the applicable licenses and operates the senior care facility at the Ridgeview Property.

31. The Ridgeview Borrowers, the Ridgeview Guarantor and KeyBank have also entered into that certain Forbearance Agreement with Respect to Amended and Restated Revolving Loan Agreement (the "***Ridgeview Forbearance Agreement***"; together with the Chief1 Forbearance Agreement, the "***Forbearance Agreements***"), dated as of July 21, 2023.

32. The Ridgeview Loan Agreement, the Ridgeview Guaranty, the Ridgeview Deed of Trust, the Ridgeview Security Agreement, the Ridgeview Forbearance Agreement, and all other documents and instruments securing or evidencing the Ridgeview Loan Agreement are hereinafter collectively referred to as the "***Ridgeview Loan Documents***."

**D.    Facts Relevant to All Defendants and Loan Documents**

33. The Chief1 Loan Agreement and the Ridgeview Loan Agreement shall each be referred to herein individually as a "***Loan Agreement***," and collectively as the "***Loan Agreements***."

34. The Chief1 Deeds of Trust and the Ridgeview Deed of Trust shall each be referred to herein individually as a "***Deed of Trust***," and collectively as the "***Deeds of Trust***."

35. The Chief1 Loan Documents and the Ridgeview Loan Documents shall each be referred to herein individually as a "***Loan Document***," and collectively as the "***Loan Documents***."[1]

36. Defendants were not immune to declining net cash flows as a result of the COVID-19 pandemic and its negative effects on senior living facilities as a whole. On March 1, 2023, Defendants failed to pay the monthly debt service payments required under the applicable Loan

---

[1] The Loan Documents are voluminous but can be made available upon request.

Documents. Defendants' failure to timely pay all amounts due under the Loan Documents constituted an Event of Default by each of the Defendants under Section 14.1(a)(ii) of each Loan Agreement. Defendants are also in default under the Loan Documents for failure to meet certain financial covenants, among other things.

37. On March 14, 2023, KeyBank delivered a Notice of Events of Default and Reservations of Rights in respect of the Loan Documents. The obligations under the Loan Agreements have been accruing interest at the default rates thereunder since March 2, 2023.

38. Defendants advised KeyBank that the Existing Manager operates at a significant loss. The Existing Manager had also managed many facilities that secured loans granted by Fannie Mae and other lenders. In response, on March 29, 2023, Fannie Mae commenced Civil Action No. 23-cv-00862-JMC in the United States District Court for the District of Columbia seeking the appointment of a receiver and other relief. One day after commencing the action, an Agreed Order Appointing Receiver was issued in that case on March 30, 2023. (*See Fannie Mae v. Amelia AID Propco LLC*, 1:23-cv-00862-JMC (D.D.C.), at Doc. 6).

39. Given these continuing operational losses, combined with current market conditions in the senior living industry and the broader economy, the Properties are at imminent risk of a significant decline in value.

40. Each Defendant has advised KeyBank that, due to the unavailability of cash flow from the Properties, they cannot make any further payments under the Loan Agreements and that they consent to transition the Properties to KeyBank or its designee through receivership as soon as possible.

E. **The Defendants' Obligations under the Loan Documents**

41. Defendants' obligations arising under the Loan Documents are secured by valid, binding, properly perfected first-priority liens on and security interests in the Properties and certain other collateral described more fully in the Deeds of Trust for each Property.

42. Each Defendant has failed to pay certain amounts due under the Notes and is in default for failure to pay such amounts. As a result of each Defendant's failure to timely pay all amounts due and owing under the Loan Documents, Events of Default (as defined thereunder) exist as to each Defendant. Each Defendant has been provided with actual notice of the Events of Default and of the Application. No further notice is required under the Loan Documents.

43. KeyBank's liens extend to all Defendants' real and personal property of any kind as described in the Loan Documents. For the avoidance of doubt, nothing herein grants KeyBank any lien that is not already provided by the Loan Documents.

44. Each of the Deeds of Trust provides in Section 16(b) that, upon an Event of Default, KeyBank "shall be entitled to the appointment of a receiver of the Premises, and the Rents and benefits thereof, without notice or demand, and without regard to the adequacy of the security for the Obligations, the value of the Premises or the solvency of the Grantor…." The Deeds of Trust further describe the broad authority to be granted to any such receiver.

45. The Loan Agreements further provide in Section 15(a) that upon the occurrence of, and during the continuance of an Event of Default, KeyBank may, among other things, "[t]ake possession of the [Property] or the Collateral, or any of them, and do anything which is necessary or appropriate in its sole judgment to fulfill the obligations of the Borrower…."

46. Each Deed of Trust provides that upon the occurrence of, and during the continuance of, any Event of Default, KeyBank may (a) declare the unpaid debt to be immediately due and payable, and (b) institute proceedings for the foreclosure of the Deed of Trust, among other things. *See* Loan Agreements at § 16.

47. Pursuant to the Forbearance Agreements, each of the Defendants executed and delivered to KeyBank (i) undated nonmerger deeds in lieu of foreclosure (each, a "***Deed***") which shall convey to a transferee (a "***Transferee***") all of such Defendant's right, title and interest in such Defendant's Property, (ii) an undated bill of sale and assignment (each, a "***Bill of Sale***") which

shall convey and assign to a Transferee all of such Defendant's right, title and interest in its personalty and fixtures owned by it associated with, arising from and located on or in, such Defendant's Property, and (iii) an undated absolute assignment of contracts which shall convey and assign to Transferee all of such Defendant's right, title and interest in its contracts, to the extent assignable, with respect to such Defendant's Property (each, an "**Assignment of Contracts**"; together with the Deeds and Bills of Sale, the "**Transfer Documents**").

48. Pursuant to the Forbearance Agreements, the Defendants agreed that they shall "reasonably agree upon a consensual application to the United States District Court for the Northern District of Ohio, to the appointment of a Person as receiver of Rents and profits … for all or any of the [Properties] by [KeyBank], on terms substantially similar to that certain Agreed Order Appointing Receiver entered in *Fannie Mae v. Amelia AID Propco LLC et al.* (Civil Action No. 1:23-cv-00862-JMC)." They further agreed "that the appointment of a Receiver to collect the Rents, profits and other income generated from a [Property] and to administer the [Properties] for the benefit of [KeyBank] shall be without regard to: (i) whether the [Properties] are adequate or inadequate security for the outstanding debt; (ii) whether there is imminent danger that the [Properties] and the Rents, profits and other income arising therefrom will be lost, concealed, or transferred or is likely to diminish in value; or (iii) any other legal requirement for such appointment." The Forbearance Agreements also include an express waiver of any requirement that a bond be posted by the Receiver. *See* Forbearance Agreements at § 5(a). The Defendants have confirmed their agreement to waive any such requirement for a receiver's bond.

49. Each Loan Agreement further provides that each Defendant shall pay KeyBank's reasonable attorney's fees and disbursements incurred in connection with the Loan Documents, including with respect to enforcement. *See* Loan Agreements at § 7.2. Additionally, pursuant to a Pre-Negotiation Letter, dated February 15, 2023, by and among KeyBank and the Defendants,

among others, the Defendants agreed that all reasonable and documented out-of-pocket expenses incurred by KeyBank, including the reasonable fees, charges and disbursements of counsel and other professionals (including FTI Consulting, Inc.) in connection with the enforcement, protection of its rights and any workout, restructuring or negotiations constitute "Loan and Administration Expenses" under Section 7.1 of the Loan Documents.  *See* Pre-Negotiation Letter at p. 2.

50. KeyBank has valid claims against the Defendants, which claims are secured by the Properties.  Due to the nature of each Property (which includes real property), and the requirement to provide advance notice to State regulators of a change of control of the operator holding the applicable licenses, it may take months to effectuate sales to Transferees or foreclosures of the portions of the Properties constituting real property, during which time rents from the Properties (which are part of KeyBank's collateral) will be lost.  Because those rents cannot be recovered after they are spent, foreclosure is an insufficient remedy, and KeyBank's rights will be frustrated and diminished in value unless a receiver is appointed.  No less drastic equitable remedy is available.  A receiver is therefore needed to take control of each Property, to preserve the rents pending foreclosure of such Property, and to take such other and further actions as authorized under this Order.

51. The Defendants have no creditors other than KeyBank, other than customary trade payables and indebtedness representing the Defendants' liability in connection with insurance claims, all as more particularly set forth in the Loan Agreement, the agreed order appointing receiver and the Forbearance Agreements.

52. Based on financial information provided by representatives of the Defendants to KeyBank, the Defendants' overall liabilities are in excess of the value of its assets.  But irrespective of the business' balance sheet, due to the insufficiency of net cash flows from the Properties, the Defendants are unable to pay the total due to KeyBank under the Loan Agreements.

53. Moreover, the Properties continue to diminish in value with every passing day, and KeyBank is exposed to irreparable harm for which emergency relief is required.

54. Specifically, the COVID-19 pandemic caused declining net cash flows and significant negative effects on senior living facilities as a whole, leading Defendants to be unable to pay the monthly debt service payments required under the applicable Loan Documents.

## VI. CAUSES OF ACTION

### A. Breach of Contract

55. KeyBank incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth herein.

56. The Loan Documents constitute a binding contractual relationship between the parties. KeyBank has performed all of its obligations under the Loan Documents.

57. Each of the Defendants' acts and omissions constitute breaches of their respective Loan Documents.

58. As a direct and proximate result of the Defendants' defaults, KeyBank has incurred and will incur actual damages in excess of the minimum jurisdictional limits of this Court for which KeyBank seeks recovery from the Defendants. KeyBank additionally seeks the appointment of a receiver, as requested in KeyBank's contemporaneously filed Agreed Application for Appointment of Receiver.

### B. Attorneys' Fees and Expenses

59. KeyBank incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth herein.

60. Pursuant to the Loan Documents, KeyBank seeks recover of its attorneys' fees and other professionals' fees and expenses expended to enforce its rights under the Loan Documents in an amount to be determined following the disposition of KeyBank's Collateral (as defined in the Loan Agreements) in accordance with orders of the Court.

### C. Protective Advances

61. KeyBank incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth herein.

62. Pursuant to the Loan Documents, KeyBank is entitled to reimbursement, with interest, of advances KeyBank makes to insure, maintain, or otherwise protect the Properties ("Advances").

63. Such Advances should be determined following the disposition of KeyBank's Collateral in accordance with orders of the Court.

### D. Judicial Sales

64. KeyBank incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth herein.

65. The consents in the Loan Documents give rise to KeyBank's entitlement to the judicial sale of the Properties through a court-appointed receiver.

66. KeyBank is entitled to an order of the Court authorizing the use, sale, or other disposition of the Properties with a receiver appointed for managing and protecting the Properties in the interim.

67. KeyBank is also entitled to an order of the Court authorizing the receiver to solicit and enter into transactions for the sale, lease or other disposition of the Properties, free and clear of liens and encumbrances, for the purpose of (a) monetizing or otherwise satisfying Borrowers' obligations to KeyBank and (b) extinguishing any rights of Defendants (or others that may claim through them) to redeem such Properties under applicable law. KeyBank has filed contemporaneously herewith a motion and proposed agreed order to define the scope of

responsibilities and rights of a receiver for the Properties with terms to which Borrowers have consented.

68. KeyBank reserves the right to seek sales of the Properties pursuant to statute, 28 U.S.C. § 2001, or otherwise.

### VII. CONDITIONS PRECEDENT

69. All conditions precedent to KeyBank's right to recovery have been performed, have occurred, or have otherwise been waived.

### VIII. PRAYER

Wherefore, KeyBank prays that Defendants be cited to appear and make answer herein and that KeyBank have a judgment against Defendants as follows:

a) That a receiver be appointed, as requested in KeyBank's contemporaneously filed Emergency Application for Appointment of Receiver with the powers set forth therein, including the power to dispose of the Properties free of Borrowers' rights of redemption, if any, and free and clear of any other liens or encumbrances, paid in the order of their relative priority; and

b) That KeyBank be awarded the actual damages incurred by KeyBank as a result of Defendants' defaults, prejudgment and post-judgment interest at the maximum lawful amount, expenses, including attorneys' fees and expenses incurred in enforcing KeyBank's contractual rights, Advances (with interest), costs of court and any such other and further relief, at law or in equity, to which KeyBank may show itself to be justly entitled.

### IX. VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on September 27, 2023.

_____
Name: Tatia Gagnon
Title: Vice President, KeyBank National Association

Respectfully submitted,

**THOMPSON HINE LLP**

*/s/ Jonathan S. Hawkins*
Curtis L. Tuggle (0078263)
Jonathan S. Hawkins (0082860)
Brenna Fasko (0084897)
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Telephone: 216-566-5500
Facsimile: 216-566-5800
curtis.tuggle@thompsonhine.com
jonathan.hawkins@thompsonhine.com
brenna.fasko@thompsonhine.com

*and*

**CROWELL & MORING LLP**

Frederick Hyman (*pro hac to be filed)*
NY Bar No. FH7832
Randall L. Hagen (*pro hac to be filed*)
MD Federal Bar No. 08099
590 Madison Avenue
New York, NY 10022
Telephone: 212-803-4028
fhyman@crowell.com
rhagen@crowell.com

*Counsel for Plaintiff KeyBank National Association*